

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RUSSELL K. LAY** | § | Case No. 11-43085 |
| xxx-xx-7306 | § | |
| **and KRISTINA L. LAY** | § | |
| xxx-xx-2089 | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| BEVERLY CHRISTENSEN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-4234 |
| | § | |
| RUSSELL K. LAY | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Beverly Christensen d/b/a Circle

C Properties, seeking a determination of whether an alleged debt owed to it by the

Defendant-Debtor, Russell K. Lay d/b/a RKL Construction ("Defendant"), is

dischargeable, the Court issues the following findings of fact and conclusions of law.  The

Plaintiff contends that the debt is non-dischargeable as a debt obtained by false pretenses,

a false representation or actual fraud pursuant to 11 U.S.C. §523(a)(2)(A), as a debt

arising from fraud or defalcation in a fiduciary capacity under §523(a)(4) and a debt for a

---

[1]  These findings of fact and conclusions of law are not designated for publication and shall not
considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the
law of the case or as to other applicable evidentiary doctrines.

willful and malicious injury under §523(a)(6).  After the trial, the Court took the matter

under advisement.  This decision disposes of all issues pending before the Court.

## FINDINGS OF FACT

1.  For several years prior to the incidents on which Plaintiff's action is based, Plaintiff and Defendant enjoyed a mutually beneficial, standing relationship under which Circle C Properties, a residential property management company in Plano,[2] contracted with Russell Lay for certain general repair and installation work to be performed at all of its managed properties.[3]

2.  As a repair or installation need arose, a tenant would call Plaintiff at Circle C Properties, who would then contact the Defendant to request an estimate on the work needed to be done.[4]

3.  In response, Plaintiff would either authorize or withhold authorization for performance of the work.  Any authorized work then would be performed by Defendant for the amount estimated.  Following completion of such authorized work, Defendant would invoice Circle C Properties, which would then pay the invoice by check in the normal course of business.[5]

4.  In other instances, Defendant would become aware of repair work needed to be done at a certain rental property managed by Circle C Properties, and would contact Plaintiff for an authorization to perform such work.  This course of dealing continued on an "as-needed" basis for properties under management by Circle C Properties.[6]

---

[2]  Circle C Properties is a sole proprietorship through which the Plaintiff engages in property management.

[3]  Stipulation of fact #1 on p. 2 of PTO.  This is the first of several factual stipulations by the parties that were set forth in the approved Joint Pre-Trial Order ("PTO") entered in this adversary proceeding on August 22, 2012.

[4]  Stipulation of fact #2.

[5]  Stipulation of fact #3.

[6]  Stipulation of fact #4.

5.      A dispute arose between the parties regarding discrepancies regarding equipment procured and installed by the Defendant on rental properties owned and/or managed by the Plaintiff.

6.      Specifically, the Plaintiff alleged that the Defendant on numerous occasions had fraudulently invoiced Circle C for procurement and installation of new equipment protected by warranty coverage at a stated price while actually utilizing used equipment that had no warranty protection attached and that was procured at a price often significantly lower than that reflected on the invoices tendered by the Defendant to the Plaintiff.[7]

7.      The substituted equipment consisted primarily of air conditioners, water heaters and cabinetry installations pertaining to the following rental locations:

(a) 709 Lee St. Apt. #3, in Mesquite, TX;[8]

(b) 321 Evelyn in Garland, TX[9];

(c) 7135 Fair Oaks, Unit #18 in Dallas, TX;[10]

(d) 1914 Frances in Garland, TX;[11]

(e) 7152 Fair Oaks, Unit #1193 in Dallas, TX;[12] and

(f) 1916 Frances in Garland, TX.[13]

8.      The Plaintiff initiated litigation against the Defendant in the County Court at Law #1 in and for Collin County, Texas under case no. 00-1318-2011 and styled

---

[7] See Ex. 9.

[8] Ex. 5 through 5i, excluding 5a; Ex. 7b.

[9] Ex. 2 and 2a.

[10] Ex. 3, 3a, 3b and 3c.

[11] Ex. 4, 4a, 4b and 4c.

[12] Ex. 6.

[13] Ex. 1; Ex. 7, 7a and 7b.

*Beverly Christensen, individually, and d/b/a Circle C Properties v. Russell Lay, individually and d/b/a RLK Construction* (the "State Court Litigation").[14]

9.    The state court petition filed by the Plaintiff sought recovery of compensatory damages for breach of contract, fraud, and unjust enrichment and further sought the imposition of exemplary damages and an award of attorney's fees.[15]

10.   The trial in the State Court Litigation was conducted on September 1, 2011.

11.   Despite "having been properly and duly notified of trial," the Defendant failed to appear for trial at the designated time and date.[16]

12.   The Defendant admitted on cross-examination that he had not only sought and received a continuance of a prior trial setting to the September 1, 2011 date but he actually signed the second scheduling order on June 6, 2011 that established that new trial date.

13.   The state court conducted a full evidentiary trial on September 1, 2011 with consideration of evidence submitted in favor of the Plaintiff as the sole attending party.

14.   Plaintiff offered oral testimony at the trial and she introduced documentary evidence in support of her testimony.[17]

15.   On September 9, 2011, the County Court at Law #1 in and for Collin County, Texas entered judgment in favor of Plaintiff, and against the Defendant, in the amount of $8,755.00 in compensatory damages "for breach of contract, fraud, and unjust enrichment."[18]

16.   The State Court Judgment also awarded to the Plaintiff an additional $8,755.00 in exemplary damages based on fraud, pre-judgment interest in the amount of

---

[14]  Stipulation of fact #5.

[15]  Ex. 9.

[16]  Ex. 8.

[17]  See trial transcript admitted as Ex. 10 and the state court exhibits attached thereto.  The state court documents are the same exhibits as those introduced in this proceeding as Exhibits 1 through 7b.

[18]  Stipulation of fact #5 and Ex. 8

$260.25, and an award of attorney's fees in the amount of $8,226.06, for a total judgment amount of $25,996.31, with post-judgment interest to accrue at 5% per annum.[19]

17.    The Defendant filed his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on October 6, 2011 – less than 30 days after the entry of the Judgment.[20]

18.    The Plaintiff timely filed her Complaint to Determine Dischargeability of a Debt on December 22, 2011, seeking to except her claim arising from the Judgment from the scope of any discharge granted to the Defendant.

19.    The Plaintiff contends that the Defendant is precluded from challenging the legitimacy of her claim arising from the Judgment through the principles of collateral estoppel and that, through those established facts and those demonstrated at trial before this Court, her claim against the Defendant is non-dischargeable under the various subsections of 11 U.S.C. §523(a).

20.    The state court did not issue specific findings of fact in support of its Judgment.  It stated merely in its judgment that the compensatory damages were awarded "for breach of contract, fraud, and unjust enrichment"[21] and that exemplary damages were based upon a finding of fraud.[22]

21.    The Plaintiff did, however, tender in this case the complete trial record from the State Court Litigation.[23]

22.    The trial record contains the complete testimony of the Plaintiff regarding the various incidents of misrepresentation by the Defendant pertaining to the goods and services invoiced on various occasions to the Plaintiff upon which the state court relied, together with the exhibits admitted by the state court.[24]

---

[19]  *Id.*

[20]  Stipulation of fact #5.

[21]  Stipulation of fact #5 and Ex. 8.

[22]  Ex. 8.

[23]  Ex. 10 and attached exhibits.

[24]  *Id.*

23.     Upon examination of the state court record, including the evidence produced therein, it is sufficient to discern the subsidiary facts supporting the judgment.

24.     The contractual relationship between the Plaintiff and the Defendant created duties under both contract and tort law.

25.     While the state court's compensatory damage award was partially based upon breach of contract, it was equally based upon the fraudulent conduct of the Defendant in making repeated misrepresentations to the Plaintiff the nature of the goods and services which were invoiced to the Plaintiff on the referenced occasions.

26.     Given that the state court awarded in its judgment each subset of damages attributable to each occurrence documented by the admitted exhibits and referenced by the Plaintiff in her testimony, the state court found that, in each instance referenced in the testimony:

(1)  the Defendant made a false representation to the Plaintiff in each referenced invoice;

(2)  the Defendant knew that each representation was false in each instance (thus establishing the foundation for the assessment of exemplary damages);

(3) the Defendant intended for the Plaintiff to rely on each misrepresentation contained in each false invoice;

(4) the Plaintiff actually and justifiably relied upon each misrepresentation of the Defendant by tendering the false invoice amount to the Defendant; and

(5) the Plaintiff suffered actual damages in the cumulative amount of $8,755 as a result of that reliance.

27.     Based upon the adduced evidence, the state court further found that the assessment of exemplary damages against the Defendant was appropriate and authorized under Texas law.

28.     In the absence of distinct factual findings of fraud by the state court based upon the adduced evidence, it could not have authorized, as it clearly did, the recovery of exemplary damages by the Plaintiff for the fraudulent representations by the Defendant. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ["To support an award of exemplary damages, the plaintiff must prove a distinct tortious injury with actual damages."].

**Page 6 of  20**

29.     Indeed, it is irrefutable that the state court not only found that the Plaintiff had proven her fraud claims against the Defendant, but that she had proven the validity of those fraud claims by clear and convincing evidence – as that is the requisite evidentiary standard for recovery of exemplary damages resulting from fraud. *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 484 (Tex. App. – Fort Worth 2004, no pet.); 2A TEX. CIV. PRAC. & REM. CODE ANN. §41.003(a)(1) (Vernon Supp. 2012).

30.     Based upon the adduced evidence, the state court further found that the assessment of pre-judgment interest was appropriate and authorized under Texas law.

31.     Based upon the adduced evidence, the state court further found that an award of reasonable and necessary attorney's fees was appropriate and authorized under Texas law.

32.     The factual issues as determined by the Collin County Court at Law #1 in the State Court Litigation were essential to that court's judgment.

33.     All of the issues as determined by the Collin County Court at Law #1 were fully and fairly litigated in the State Court Litigation and the Court specifically referenced that its judgment was rendered for the Plaintiff "following the closing of all the evidence."[25]

34.     The parties in this adversary case are identical to those in the State Court Litigation.

35.     Thus, the Plaintiff is a creditor of the Defendant-Debtor by virtue of the state court judgment.

36.     The Defendant is accordingly collaterally estopped from re-litigating those factual determinations that necessarily support the judgment issued in the State Court Litigation.

37.     Even if the principles of collateral estoppel are not applied in this case, the Plaintiff's evidentiary submissions at trial are sufficient to render the judgment amount non-dischargeable under 11 U.S.C. §523(a)(2)(A).

---

[25] Ex. 8.

38. In each instance documented in Ex. 1 through 7, including the admitted subparts, and referenced in the testimony of the Plaintiff at trial, the Defendant made representations to the Plaintiff in each respective invoice designed to intentionally and purposefully deceive the Plaintiff into paying for goods and/or services that were not actually procured or rendered.

39. In each instance documented by Exhibits 1 through 7, the Defendant made representations to the Plaintiff in each respective invoice that certain equipment and/or services were being delivered for Plaintiff's benefit at a time when the Defendant knew that he had not delivered such equipment and/or services to Plaintiff's properties.

40. Such false representations by the Defendant constitute in each instance a knowing and fraudulent falsehood that described past or current facts.

41. The Plaintiff actually and justifiably relied upon the false representations made by the Defendant in each respective invoice documented in Ex. 1 through 7, based upon the prior social and business relationship between the parties.

42. The Defendant's testimony about the circumstances surrounding the challenged invoices was not credible.

43. The supposition that criminals were repeatedly responsible for stealing the new equipment invoiced and that such criminals repeatedly "replaced" that equipment with used merchandise to conceal their crime is not credible.

44. The Plaintiff did not inspect the premises after every installation performed by the Defendant, but instead relied on the word of the Defendant based upon trust arising from the personal friendships existing among their family members and the good will engendered by the Defendant's past performance.

45. Notwithstanding that a degree of trust existed between the Plaintiff and the Defendant, the Plaintiff has failed to demonstrate by a preponderance of the evidence that a fiduciary relationship existed between the Defendant and herself.

46. From a reasonable person's standpoint, the repeated knowing and intentional submissions of fraudulently inflated invoices by the Defendant to the Plaintiff in order to induce an overpayment were substantially certain to cause financial harm to the Plaintiff.

47.     To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1.      The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§1334 and §157.

2.      The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O).

3.      The Plaintiff's Complaint seeks a determination that the debt which it alleges is owed to it should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud, as a debt arising from fraud or defalcation in a fiduciary capacity under §523(a)(4) and a debt for a willful and malicious injury under §523(a)(6).

4.      In seeking such an exception to the Debtor's discharge, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

5.      All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[26] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

*Applicable Texas Law*

6.      To prevail on a claim against the Defendant for fraudulent misrepresentation under Texas law, the Plaintiff was required to prove in the State Court Litigation that: (1) the Defendant made a material representation that was false; (2) the Defendant knew that representation was false or made the representation recklessly without any knowledge of the truth; (3) the Defendant intended to induce the Plaintiff to act upon the representation; and (4) the Plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011).

---

[26] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

7.    While a breach of contract cannot support a recovery of exemplary damages under Texas law, a contractual relationship may create duties under both contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), *citing Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947).

8.    "The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached." *Id*.

9.    "To support an award of exemplary damages, the plaintiff must prove a distinct tortious injury with actual damages." *Id.*


*Collateral Estoppel*

10.   "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

11.   In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

12.   "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

13.   In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar re-litigation of issues relevant to dischargeability" and satisfy the elements thereof. *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264 (5th Cir. 2005) (quotation marks omitted).

14.   In other words, when an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the

creditor nor the debtor may re-litigate those grounds. *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

15. While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

16. The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. §1738 (1994).

17. Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

18. Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

19. Collateral estoppel under Texas law prevents the re-litigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App. – Dallas 2012, no pet.).

20. "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Properties, Ltd., v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (*citing Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988).

21. Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.).

22.     "Once an actually litigated and essential issue is determined, that issue is
        conclusive in a subsequent action between the same parties." *Van Dyke v.
        Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

23.     In the context of issue preclusion, "issue" and "fact" are interchangeable. The
        purpose of the reviewing court is to determine the specific facts brought that were
        already established through full and fair litigation.

24.     As stated in the Fifth Circuit decision in *Fielder v. King (Matter of King),* 103 F.3d
        17, 19 (5th Cir. 1997):

                "Issue preclusion will prevent a bankruptcy court from
                determining dischargeability issues for itself only if 'the first
                court has made *specific, subordinate, factual findings* on the
                identical dischargeability issue in question . . . and the facts
                supporting the court's findings are discernible from that
                court's record.'"], *citing Dennis v. Dennis (Matter of Dennis),*
                25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies
                in bankruptcy courts only if, inter alia, the first court has
                made . . . factual findings on the identical dischargeability
                issue in question – that is, an issue which encompasses the
                same prima facie elements as the bankruptcy issue."]
                (emphasis added).

25.     While separate and distinct findings of fact by a state trial court are preferable,
        factual findings need not be explicitly stated nor separately denominated in order
        for collateral estoppel principles to apply.

26.     In the event that the state court judgment is conclusory and does not contain
        detailed facts sufficient as findings to meet the federal test of non-dischargeability,
        the court may also examine the evidence produced in the state court proceedings to
        support the judgment and determine whether the record of the state proceedings is
        sufficient to discern the subsidiary facts supporting the judgment. *Simpson & Co.
        v. Shuler (In re Shuler)*, 722 F.2d 1253, 1257-58 (5th Cir. 1984); *Sierra Inv. Assoc.
        v. Tomlin (In re Tomlin)*, 2005 WL 6440629, at *5 (Bankr. N.D. Tex., Dec. 20,
        2005) (*citing Dennis*, 25 F.3d at 278).

27.     In other words, collateral estoppel under Texas law may be properly applied "with
        realism and rationality" through an examination of the state court proceeding to
        discern the subsidiary facts "necessarily decided" to reach a judgment in the first
        proceeding and which are germane to a determination of non-dischargeability

under the Bankruptcy Code.  *See, e.g., Fort Worth Hotel, L.P. v. Enserch Corp.*, 977 S.W.2d 746, 753-54 (Tex. App. – Fort Worth 2003, no pet.) [collateral estoppel properly applied to establish negligence of defendant even though factfinder did not make any specific finding that a particular act or omission caused an explosion].

28.   However, it is imperative that the bankruptcy court be able to discern a sufficient factual basis in the state court record to support the conclusions recited in the state court judgment.  *Shuler,* 722 F.2d at 1257-58.

29.   As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

30.   The trial record from the State Court Litigation sufficiently evidences the subsidiary facts determined and relied upon by the state court to render its judgment for compensatory and exemplary damages in Plaintiff's favor based upon the Defendant's fraud and provides a sufficient factual foundation for the imposition of collateral estoppel principles.

31.   The imposition of collateral estoppel principles is not precluded by the fact that the state court judgment arose from the Defendant's post-answer default caused by the Defendant's failure to appear for trial after answering the allegations of the state court petition.

32.   As the Supreme Court of Texas has recently stated:
> [A] post-answer default constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer.  Because the merits of the plaintiff's claim remain at issue, judgment cannot be rendered on the pleadings, and the plaintiff must prove its claim.

*Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183-84 (Tex. 2012) (*citing Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979)).

33.   Thus, because a plaintiff in a post-answer default context is put to its evidentiary burden to prove its case, the Fifth Circuit has "held under Texas law that where the court enters a default judgment after conducting a hearing or trial at which the plaintiff meets his evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel principles."  *Pancake,* 106 F.3d at 1244.

34.    The imposition of collateral estoppel principles is not precluded by the fact that the filing date of the Defendant's bankruptcy petition occurred 27 days after the entry of the state court judgment and that the state court therefore had not yet lost its plenary jurisdiction over the State Court Litigation at the time that the automatic stay was invoked by the Defendant.

35.    "A final judgment is not a prerequisite for issue preclusion when a [factfinder] has rendered a conclusive verdict.... For purposes of issue preclusion, ... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995) (citing RESTATEMENT (SECOND) OF JUDGMENTS §13 cmt. g (1982)).

*Nondischargeability Under 523(a)(2)(A): Debt Arising by False Pretenses, False Representation or Actual Fraud*

36.    The Plaintiff's Complaint seeks a determination that the debt owed to her should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

37.    11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

38.    Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[27] the

---

[27] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

39.    The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event as opposed to a representation regarding a past or existing fact. *Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) ["In order . . . to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise ... related to [a] future action [which does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense"].[28]

40.    Since the representations made by the Defendant in this case pertained to an existing fact [i.e. the type of goods listed on the invoice as compared to what was actually installed on the property by the Defendant], the Plaintiff's non-dischargeability action is properly characterized as one based upon false representation or false pretenses.

41.    While "false pretenses" and a "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).

42.    "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (E.D. Tex., Dec. 19, 2011) (*citing RecoverEdge,* 44 F.3d at 1293).[29]

---

[28]    Though some in this circuit have rejected these parallel tests as a distinction without a difference and proceeded with a unitary approach to the problem, *see In re Melancon*, 223 B.R. 300, 308 (Bankr. M.D. La. 1998), this Court feels compelled to recognize and attempt to apply the distinction drawn by the circuit court.

[29]    A debt may also be declared non-dischargeable if it was obtained by actual fraud.  To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting

43.  The Fifth Circuit has stated that an intentional and purposeful deception constitutes a "knowing and fraudulent falsehood." *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483-84 (5th Cir. 1992).

44.  It is generally recognized that "[a] promise to perform acts in the future is not a qualifying misrepresentation merely because the promise subsequently is breached." *Woo, Inc. v. Donelson (In re Donelson)*, 410 B.R. 495, 503 (Bankr. S.D. Tex. 2009) (citing *Allison* 960 F.2d at 483).

45.  However, "[a] debtor's misrepresentations of his intentions ... may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised." *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (*citing Allison*, 960 F.2d at 484.).

46.  The degree of reliance required under §523(a)(2)(A) is justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995). Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent. "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (*citing Field v. Mans*, 516 U.S. at 71.

47.  Accordingly, a debt arising from the knowing submission of false invoices for payment may be excepted from discharge under §523(a)(2)(A). *Bartley v. Jacobson (In re Jacobson)*, 485 B.R. 255, 261 (Bankr. D. Kan. 2013); *Integrated Practice Mgmt., Inc. v. Olson (In re Olson)*, 325 B.R. 791 (Bankr. N.D. Iowa 2005); *Automotive Finance Corp. v. Vasile (In re Vasile)*, 297 B.R. 893 (Bankr. M.D. Fla. 2003).

48.  Thus, the debt owed by the Defendant to the Plaintiff, as established by the judgment arising from the State Court Litigation, is therefore excepted from discharge in its entirety as a debt obtained by false representations pursuant to 11 U.S.C. §523(a)(2(A).

---

creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

*Non-dischargeability under § 523(a)(4)*:  *Debt Arising From Fraud or Defalcation*
*in a Fiduciary Capacity*.

49.    The Plaintiff's Complaint seeks a determination that the debt owed to her should
be excepted from discharge under §523(a)(4) as a debt arising from fraud while
acting in a fiduciary capacity.

50.    11 U.S.C. §523(a)(4) provides that "A discharge under 11 U.S.C.§ 727 does not
discharge an individual from a debt for fraud or defalcation while acting in a
fiduciary capacity, embezzlement or larceny."

51.    Whether the actions of an individual were taken in a fiduciary capacity for the
purposes of §523(a)(4) is determined by federal law.  *FNFS, Ltd. v. Harwood (In
re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

52.    However, "state law is important in determining whether or not a trust obligation
exists."  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347,
350 (5th Cir. 2004).

53.    The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the
following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than
> it is under general common law.  Under §523(a)(4),
> "fiduciary" is limited to instances involving express or
> technical trusts.  The purported trustee's duties must,
> therefore, arise independent of any contractual obligation.
> The trustee's obligations, moreover, must have been imposed
> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex
> malificio* thus also fall short of the requirements of
> §523(a)(4).
> . . . Statutory trusts, by contrast, can satisfy the dictates of
> §523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary
> agents, contractors, or sellers into fiduciaries by the simple
> incantation of the terms "trust" or "fiduciary."  Rather, to meet
> the requirements of §523(a)(4), a statutory trust must (1)
> include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

54.    Thus, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question.  *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

55.    The Fifth Circuit recognizes that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993)).

56.    The Defendant did not stand in a fiduciary relationship to the Plaintiff sufficient to meet the trust requirement under 11 U.S.C. §523(a)(4).

57.    Thus, the request contained in the Plaintiff's complaint to except the debt owed by the Defendant to the Plaintiff pursuant to the judgment arising from the State Court Litigation as a debt arising from fraud while acting in a fiduciary capacity must be denied.


*Nondischargeability Under §523(a)(6): Debt Arising from Willful and Malicious Injury*

58.    The Plaintiff contends that the foregoing debt owed to her by the Defendant should also be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon her by the Debtor-Defendant.

59.    Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

60.    In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed non-dischargeable under §523(a)(6).

61.   The *Geiger* decision requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

62.   As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm.  *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999);  *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

63.   The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent.  A court is thus expected to analyze whether the defendant's's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. Appx. 360 (5th Cir. 2007).

64.   "Injuries covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

65.   A claim under §523(a)(6) for willful and malicious injury is established when a debtor inflicts a deliberate injury by the repeated knowing and intentional submissions of fraudulently inflated invoices in order to induce an overpayment in a manner substantially certain to cause financial harm.

66.   The submissions of fraudulently inflated invoices by the Defendant, as an intentional infliction of an injury, constituted a willful and malicious injury to the Plaintiff or her property.

67.   Accordingly, the debt owed by the Defendant to the Plaintiff, as established by the judgment arising from the State Court Litigation, is therefore excepted from discharge in its entirety as a debt arising from a willful and malicious injury inflicted by the Defendant pursuant to 11 U.S.C. §523(a)(6).

68.   With regard to attorney's fees and accrued interest,  "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable ..., the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208; see also *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998).

69.   Court costs of $250.00 are awarded to the Plaintiff to be paid by the Defendant.

70.   Thus, the debt owed by the Defendant, Russell K. Lay,  to the Plaintiff, Beverly Christensen, as established by the judgment in the State Court Litigation, is therefore excepted from discharge in its entirety pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(6).

71.   All other relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be denied.

72.   To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

73.   An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 03/01/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE